**BRODSKY & SMITH, LLC**
Evan J. Smith (SBN 242352)
esmith@brodsky-smith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Tel.: (877) 534-2590
Fax: (310) 247-0160

*Attorneys for Plaintiff*

[Additional Counsel Listed Below]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAILE STEINBERG, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| v. ) | JURY TRIAL DEMANDED |
| BROCADE COMMUNICATIONS SYSTEMS, INC., JUDY BRUNER, LLOYD A. CARNEY, RENATO A. DIPENTIMA, ALAN L. EARHART , JOHN W. GERDELMAN, KIM C. GOODMAN, DAVID L. HOUSE, L. WILLIAM KRAUSE, DAVID E. ROBERSON, SANJAY VASWANI, BROADCOM LIMITED, BROADCOM CORPORATION, and BOBCAT MERGER SUB, INC., ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on November 2, 2016 (the "Proposed Transaction"), pursuant to which Brocade Communications Systems, Inc. ("Brocade" or the "Company") will be acquired by Broadcom Limited ("Ultimate Parent"),

1  Broadcom Corporation ("Parent"), and Bobcat Merger Sub, Inc. ("Merger Sub," and together with

2  Ultimate Parent and Parent, "Broadcom").

3      2.      On November 2, 2016, Brocade's Board of Directors (the "Board" or "Individual

4  Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

5  Agreement").   Pursuant to the terms of the Merger Agreement, shareholders of Brocade will

6  receive $12.75 in cash for each share of Brocade common stock owned.

7      3.      On December 6, 2016, defendants filed a Preliminary Proxy Statement (the "Proxy

8  Statement") with the United States Securities and Exchange Commission ("SEC") in connection

9  with the Proposed Transaction.

10     4.      The Proxy Statement omits material information with respect to the Proposed

11 Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff

12 alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of

13 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27

of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934

Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a

corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the

transactions and wrongs complained of herein occurred in this District.

2

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Brocade common stock.

9.      Defendant Brocade is a Delaware corporation and maintains its principal executive offices at 130 Holger Way, San Jose, California 95134.  Brocade's common stock is traded on the NasdaqGS under the ticker symbol "BRCD."

10.      Defendant Judy Bruner ("Bruner") has served as a director of Brocade since January 2009.  According to the Company's website, Bruner is Chair of the Audit Committee.

11.      Defendant Lloyd A. Carney ("Carney") has served as a director of Brocade since February 2013 and as Chief Executive Officer ("CEO") since January 2013.

12.      Defendant Renato A. DiPentima ("DiPentima") has served as a director of Brocade since January 2007.   According to the Company's website, DiPentima is a member of the Compensation Committee and the Nominating and Governance Committee.

13.      Defendant Alan L. Earhart ("Earhart") has served as a director of Brocade since February 2009.   According to the Company's website, Earhart is a member of the Audit Committee.

14.      Defendant John W. Gerdelman ("Gerdelman") has served as a director of Brocade since January 2007.  According to the Company's website, Gerdelman is a member of the Audit Committee and the Corporate Development Committee.

15.      Defendant Kim C. Goodman ("Goodman") has served as a director of Brocade since February 2016.

16.      Defendant David L. House ("House") has served as a director of Brocade since February 2004 and as Chairman of the Board since December 2005.  According to the Company's

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

website, House is a member of the Compensation Committee, the Nominating and Governance Committee, and the Corporate Development Committee.

17.     Defendant L. William Krause ("Krause") has served as a director of Brocade since 2004.  According to the Company's website, Krause is Chair of the Compensation Committee and a member of the Nominating and Governance Committee.

18.     Defendant David E. Roberson ("Roberson") has served as a director of Brocade since April 2014.  According to the Company's website, Roberson is Chair of the Corporate Development Committee and a member of the Audit Committee.

19.     Defendant Sanjay Vaswani ("Vaswani") has served as a director of Brocade since April 2004.  According to the Company's website, Vaswani is Chair of the Nominating and Governance Committee and a member of the Compensation Committee.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.     Defendant Ultimate Parent is a limited liability company organized under the laws of the Republic of Singapore and a party to the Merger Agreement.

22.     Defendant Parent is a California corporation, an indirect subsidiary of Ultimate Parent, and a party to the Merger Agreement.

23.     Defendant Merger Sub is a Delaware corporation, a direct wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Brocade (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.   As of August 26, 2016, there were approximately 400,870,091 shares of Brocade common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act, and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.   Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.   Therefore, final injunctive relief on behalf of the Class is appropriate.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

31.     Brocade is a leading supplier of networking hardware, software, and services, including Storage Area Networking solutions and Internet Protocol Networking solutions, for businesses and organizations of various types and sizes.

32.     On November 21, 2016, Brocade issued a press release wherein it reported its financial results for its fourth quarter and full fiscal year ended October 29, 2016.  Brocade reported fourth quarter revenue of $657 million, an increase of 12% year-over-year and 11% quarter-over-quarter.  Revenue for fiscal year 2016 was $2,346 million, up 4% year-over-year. Additionally, non-GAAP diluted earnings per share were $0.33 for the fourth quarter and $1.04 for fiscal year 2016, up 27% and up 3% year-over-year, respectively.

33.     With respect to the results, Individual Defendant Carney, CEO of the Company, commented:

> Fiscal 2016 was a year of significant accomplishment[.]  We delivered record revenue and expanded our market reach to address critical requirements at the network edge through our acquisition of Ruckus Wireless. In addition, we provided our customers with significant innovations across our product portfolio, including Gen 6 Fibre Channel, data center automation, Ruckus Cloud Wi-Fi, and next-generation data center routing. With a range of new IP Networking solutions expected to launch in the first quarter of fiscal 2017, we continue to advance our roadmap and help our customers transform their networks for digital business.

*Background of the Proposed Transaction*

34.     As set forth in the Proxy Statement, in May 2016, Tom Krause ("T. Krause"), Vice President of Corporate Development and Acting Chief Financial Officer of Ultimate Parent, contacted Ted Rado ("Rado"), Vice President of Corporate Development of Brocade, to arrange a meeting.  Rado and T. Krause met on May 19 and discussed Ultimate Parent's interest in potentially acquiring Brocade's fibre channel business.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

35.     On June 2, 2016, Individual Defendant Carney met with Hock E. Tan ("Tan"), CEO and President of Ultimate Parent, regarding Ultimate Parent's interest in the Company's fibre channel business.

36.     Several days later, Tan called Carney and informed him that Ultimate Parent was interested in potentially acquiring the Company as a whole.  Tan and Carney met regarding the potential acquisition on July 12.

37.     On July 14, 2016, Ultimate Parent submitted an indication of interest to acquire Brocade, which apparently did not contain a proposed purchase price.

38.     On September 8, 2016, Brocade and Ultimate Parent executed a non-disclosure agreement.

39.     On September 14 and 16, 2016, management of Brocade and Ultimate Parent met regarding the potential transaction.

40.     On September 16, 2016, Ultimate Parent delivered an indication of interest to acquire the Company for $12.00 per share in cash.

41.     On October 3, 2016, Ultimate Parent submitted its "best and final proposal" of $12.75 per share – the ultimate merger consideration.

42.     Subsequently, "Sponsor B" and a co-bidder indicated that Sponsor B's co-bidder was potentially interested in acquiring Brocade's wireless businesses, and Sponsor B was interested in the remaining portion of the Company.  Nevertheless, the Board determined not to engage in discussions regarding a transaction with Sponsor B, considering, among other things, "that Ultimate Parent had required an expeditious timeframe for the signing of a definitive agreement."

7
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

43.     On October 18, 2016, "Sponsor A" submitted an indication of interest to acquire Brocade for $11.50 to $12.00 per share.

44.     The same day, "Sponsor C" submitted an indication of interest to acquire Brocade for $11.50 to $12.00 per share.

45.     On October 19, 2016, Brocade's representatives informed Sponsors A and C that "the purchase prices included in their respective proposals were insufficient," and proceeded with discussions with Ultimate Parent.

46.     On November 1, 2016, the Board approved the Proposed Transaction with Broadcom, and the parties executed the Merger Agreement the next day.

***The Proposed Transaction***

47.     The Board caused the Company to enter into the Merger Agreement, pursuant to which Brocade will be acquired for inadequate consideration.

48.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Sections 6.03(a) and (b) of the Merger Agreement state:

> (a) The Company shall, and shall cause each of its Representatives and each of the other Acquired Companies (and each of their respective Representatives) to, immediately cease and cause to be terminated any and all existing activities, discussions or negotiations with any Persons (other than Ultimate Parent, Parent and their Representatives) conducted on or prior to the date of this Agreement with respect to any Acquisition Proposal, and shall promptly after the date of this Agreement instruct each Person that has in the twelve months prior to the date of this Agreement executed a confidentiality agreement relating to an Acquisition Proposal with or for the benefit of the Company to promptly return or destroy, in accordance with the terms of such confidentiality agreement, all information, documents and materials relating to the Acquisition Proposal or to the Acquired

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Companies and their businesses previously furnished by or on behalf of the Acquired Companies or any of their respective Representatives to such Person or such Person's Representatives. Promptly following the date of this Agreement, the Company shall provide Parent with a certificate signed by the Company's Chief Executive Officer that shall certify the Company's compliance with this Section 6.03(a).

(b) Except as expressly permitted by this Section 6.03, from the date of this Agreement until the earlier of the Effective Time or the termination of this Agreement in accordance with Section 9.01, the Company shall not, and shall cause each of the other Acquired Companies and their respective directors, executives and other officers not to, and will not authorize or direct any of its or the other Acquired Companies' respective employees, consultants or Representatives to, directly or indirectly: (i) solicit, initiate, seek or knowingly encourage, facilitate, induce or support, or knowingly take any action to solicit, initiate, seek or knowingly encourage, facilitate, induce or support any announcement, communication, inquiry, expression of interest, proposal or offer that constitutes or that would reasonably be expected to lead to, an Acquisition Proposal from any Person (other than Ultimate Parent, Parent and their Representatives); (ii) enter into, participate in, maintain or continue any discussions or negotiations relating to, any Acquisition Proposal with any Person (other than Ultimate Parent, Parent and their Representatives), other than solely to state that the Acquired Companies and their Representatives are prohibited hereunder from engaging in any such discussions or negotiations or solely to the extent necessary to clarify terms or financial capabilities with respect to an Acquisition Proposal which has been received for the Company, in order for the Company Board of Directors to be able to have sufficient information to make the determination described in Section 6.03(d); (iii) furnish to any Person (other than Ultimate Parent, Parent and their Representatives) any non-public information that would reasonably be expected to be used for the purposes of formulating any inquiry, expression of interest, proposal or offer relating to an Acquisition Proposal from a Person (other than any information disclosed in the ordinary course consistent with past practices and not known by the Company to be used for the purposes of formulating any inquiry, expression of interest, proposal or offer relating to an Acquisition Proposal); (iv) accept any Acquisition Proposal or enter into any agreement relating to any Acquisition Proposal (other than a confidentiality agreement pursuant to Section 6.03(d)) with any Person (other than Ultimate Parent, Parent and their Representatives); or (v) submit any Acquisition Proposal or any matter related thereto to the vote of the stockholders of the Company.

49.     Section 6.03(e) of the Merger Agreement further provides that "[t]he Company shall not, and shall cause each other Acquired Company not to, terminate, waive, amend or modify any provision of, or grant permission under, any standstill or confidentiality agreement to which any Acquired Company is a party, and the Company shall, and shall cause each other Acquired Company to, enforce the provisions of each such agreement."

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

50.     Further, the Company must advise Broadcom, within twenty-four hours, of any proposals or inquiries received from other parties.  Section 6.03(c) of the Merger Agreement states:

> (c) From the date of this Agreement until the earlier of the Effective Time or the termination of this Agreement in accordance with Section 9.01, the Company shall promptly (and in any event within 24 hours after Knowledge of the Company or any of the members of its Board of Directors of receipt) provide Parent with: a copy (if in writing) or written summary of material terms (if oral, which written summary may be delivered by email) of any expression of interest, proposal or offer relating to an Acquisition Proposal (including any material modification thereto, which shall include any communications as to the proposed amount or form of consideration, financing terms, if any, and closing conditions), or a copy (if in writing) or written summary (if oral, which written summary may be delivered by email) of any request for non-public information that would reasonably be expected to be used for the purposes of formulating any inquiry, expression of interest, proposal or offer relating to an Acquisition Proposal from a Person (other than any information disclosed in the ordinary course consistent with past practices and not known by the Company to be used for the purposes of formulating any inquiry, expression of interest, proposal or offer relating to an Acquisition Proposal), that is, to the Knowledge of the Company or any of the members of its Board of Directors of receipt, received by any Acquired Company or any Representative of any Acquired Company from any Person (other than Parent), including in such description the identity of the Person from which such inquiry, expression of interest, proposal, offer or request for information was received (the "Other Interested Party"). Without limiting the foregoing, the Company shall promptly (and in any event within 24 hours) notify Parent orally and in writing (which may be by email) if the Company determines to begin providing information or to engage in discussions or negotiations concerning an Acquisition Proposal pursuant to Section 6.03(d).

51.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Broadcom a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.03(g) of the Merger Agreement provides:

> (g) Notwithstanding anything to the contrary contained in this Agreement, if the Company receives an Acquisition Proposal that the Company Board of Directors determines in good faith, after consultation with outside counsel and its financial advisors, constitutes a Superior Proposal, after giving effect to all of the adjustments to the terms of this Agreement that may be offered by Parent (including pursuant to clause (ii) below), the Company Board of Directors may at any time prior to the adoption of this Agreement by the Required Company Stockholder Approval, if the Company Board of Directors determines in good faith, after consultation with outside counsel, that such action is necessary to comply with fiduciary duties owed by the Company Board of Directors to the stockholders of the Company under the DGCL, (y) effect a Change of Board Recommendation with respect to such Superior Proposal or (z) terminate this Agreement to enter into a

10

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

definitive agreement with respect to such Superior Proposal; provided, however, that the Company shall not terminate this Agreement pursuant to the foregoing clause (z), and any purported termination pursuant to the foregoing clause (z) shall be void and of no force or effect, unless the Company complies with the provisions of Section 9.01(g) and Section 9.03 in the time frames specified therein; and provided, further that the Company Board of Directors may not effect a Change of Board Recommendation pursuant to the foregoing clause (y) or terminate this Agreement pursuant to the foregoing clause (z) unless (A) the Acquired Companies shall not have materially breached this Section 6.03 with respect to such Superior Proposal or the party making such Superior Proposal and (B):

(i) the Company shall have provided prior written notice to Parent, at least four Business Days in advance (the "Notice Period"), of the Company's intention to take any action permitted under clause (y) or (z) above with respect to such Superior Proposal, which notice shall specify the material terms and conditions of such Superior Proposal (including the identity of the party making such Superior Proposal), and shall have contemporaneously provided a copy of the relevant proposed transaction agreements with the party making such Superior Proposal and all other material documents, including the definitive agreement with respect to such Superior Proposal (the "Alternative Acquisition Agreement"); and

(ii) prior to effecting such Change of Board Recommendation or terminating this Agreement to enter into a definitive agreement with respect to such Superior Proposal, the Company shall, and shall cause its Representatives to, during the Notice Period, negotiate with Parent in good faith (to the extent Parent desires to negotiate) to make such adjustments in the terms and conditions of this Agreement so that such Acquisition Proposal ceases to constitute a Superior Proposal. In the event of any revisions to the Superior Proposal, the Company shall be required to deliver a new written notice to Parent and to comply with the requirements of this Section 6.03(g) with respect to such new written notice, except that references to the four Business Day period above shall be deemed references to a two Business Day period.

For the avoidance of doubt, any actions taken by the Company in accordance with this Section 6.03(g) shall not be deemed to constitute a Change of Board Recommendation.

52.    Further locking up control of the Company in favor of Broadcom, the Merger Agreement provides for a "termination fee" of $195 million, payable by the Company to Broadcom if the Individual Defendants cause the Company to terminate the Merger Agreement.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

53.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

54.     Additionally, Brocade's officers and directors have entered into support agreements, pursuant to which they have agreed to vote their Company shares in favor of the Proposed Transaction.

55.     The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

56.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

57.     The merger consideration also fails to adequately compensate the Company's stockholders for the significant synergies that will result from the merger.

58.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

59.     Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

60.     For example, Individual Defendant Carney stands to receive $25,298,052 in connection with the Proposed Transaction, and the Company's four other named executive officers stand to receive $20,088,909.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

61.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

62.     The Proxy Statement omits material information regarding Brocade's financial projections and the *Sum of the Parts Analysis* performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore"), in support of its so-called fairness opinion.

63.     For example, the Proxy Statement fails to disclose the line items used in the calculation of unlevered free cash flow for each of the years of projections, including changes in working capital, changes in deferred revenue, stock-based compensation expense, acquisition and integration expense, restructuring charges, asset impairment charges, gains or losses relating to sales of assets and, for fiscal year 2016 only, the impact to cost of revenues from certain purchase accounting adjustments to inventory, as listed in the definition.

64.     With respect to Evercore's *Sum of the Parts Analysis*, the Proxy Statement fails to disclose Evercore's basis for using the cash flows for the entire Company to value the individual and separate Storage Networking, and Switching, Routing, and Analytics ("SRA") and Software Networking, components.  Similarly, with respect to the Campus component, the Proxy Statement fails to disclose Evercore's basis for using the estimate of the entire Company's revenue to value the individual segment.  This information is particularly material in light of the fact that, with respect to the Ruckus segment, Evercore used cash flow projections for the Ruckus business specifically, as opposed for the entire Company.

65.     Moreover, with respect to the SRA and Software Networking segments, the Proxy Statement states that Evercore used financial projections through year 2026, but the Proxy Statement fails to disclose the projections for years 2022 through 2026.

66.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

67.     Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

68.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Certain Company Forecasts"; (ii) "Opinion of Evercore Group L.L.C."; (iii) Reasons for the Merger; Recommendation of the Board of Directors;" and (iv) "Background of the Merger."

69.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Brocade's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Brocade

70.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Brocade is liable as the issuer of these statements.

72.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

73.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

74.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

75.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

76.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

77.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Broadcom

78.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79.     The Individual Defendants and Broadcom acted as controlling persons of Brocade within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Brocade and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

80.     Each of the Individual Defendants and Broadcom was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

82.     Broadcom also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

83.     By virtue of the foregoing, the Individual Defendants and Broadcom violated Section 20(a) of the 1934 Act.

84.     As set forth above, the Individual Defendants and Broadcom had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: December 12, 2016

                                        **BRODSKY & SMITH, LLC**

                                        By: _____

**OF COUNSEL:**                          Evan J. Smith (SBN 242352)
                                         esmith@brodsky-smith.com
**RIGRODSKY & LONG, P.A.**               9595 Wilshire Boulevard, Suite 900
Brian D. Long                            Beverly Hills, CA 90212
Gina M. Serra                            Tel.: (877) 534-2590
2 Righter Parkway, Suite 120             Fax: (310) 247-0160
Wilmington, DE 19803
Tel.: (302) 295-5310                     *Attorneys for Plaintiff*

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934